Teresa Almodóvar-Cortés, in her own behalf and as guard-
ian of Victoria Almodóvar-Cortés; José Renta-Almodó-
var, in his own behalf and as guardian of María and
Santos María Ortiz-Almodóvar; Olimpia Ortiz y Almo-
dóvar, and Adela Dieu y Almodóvar, Petitioners and Ap-
pellants, *v.* Russell & Co., Ltd., Respondents and Ap-
pellees.

No. 2992. Argued June 29, 1923.—Decided April 3, 1925.

1. Injunction—Irreparable Injury.—Permanently to deprive an owner of the
use and benefit of his property, without his consent and against his will,
is an irreparable injury.

2. Id.—Concession—Tenancy at Will—Licensee—Estoppel.—A person who
has consented to a verbal concession made without term or consideration by
his predecessor in interest and revocable at will, is not estopped to revoke
the same because he has exercised and later abandoned a privilege extended
to him by his licensee or because such licensee has expended in good faith
a nominal sum as an investment, when such revocation can be effected with-
out impairing the licensee's original condition.

3. Id.—Id.—Id.—Id.—Revocation.—A licensee is not injured by the revocation
of a verbal concession which he has enjoyed for several years, when such
revocation does not place him in a worse condition than that originally occu-
pied by him.

District Court of Ponce, R. Díaz Cintrón, J. Judgment dismissing
a petition for an injunction. *Reversed.*

*Gustavo Rodríguez* for the appellants. *F. Manuel Toro* for the ap-
pellees.

Mr. Justice Hutchison delivered the opinion of the court.

The court below, after a trial on the merits, dismissed a
petition for an injunction to compel the removal of a re-
taining wall maintained by respondents upon the property
of petitioners.

A statement filed by the trial judge contains the follow-
ing findings and conclusions:

"It appears from the evidence that in the year 1912 José La O
Almodóvar, plaintiffs' ancestor—father and grandfather of the re-
spective petitioners—allowed the Fortuna Estate, predecessor of
Russell & Co., Ltd., defendants herein, to build a retaining wall on
his lands at the edge of the 'Punta de Zuela' creek so that the de-
fendant might hold back the water of the said creek and store the

surplus from his irrigation system for the purpose of storing and irrigating its lands therewith. That after the death of José La O Almodóvar on February 13, 1917, his heirs, that is—their author, agreed to allow the walls to remain until December 19, 1921, when the complaint herein was filed.

"It has been shown that the defendant expended large sums of money in the construction of said wall and that, relying upon the use of the water so stored, it increased its plantings of cane by 250 acres, which it would be unable to cultivate without irrigation from the water so stored.

"The plaintiffs do not allege in their complaint in a manner unmistakable and clear that the continuance of said wall for retaining the waters of the 'Punta de Zuela' brook would cause them irreparable damage. It is a legal requisite that every petition for injunction shall contain such plea. Estate of Iglesias v. Bolívar, 11 P.R.R. 422.

"The plaintiffs agreed that the defendant should enjoy the use of the lands of the plaintiff watered by the filtering of the water from said reservoir from the year 1912 up to the filing of the complaint, and the issuance of a writ of injunction in these circumstances would be very detrimental to the interests of the party defendant.

"The damages actually incurred by the plaintiffs can be offset by an indemnity prayed for in the proper action."

The evidence adduced at the trial shows that from time to time cattle belonging to petitioners perished in the swamp adjacent to the wall in question, or, when discovered in time to be rescued, were extracted with great difficulty; and that petitioners were deprived of the use and cultivation of a portion of the land. Upon this point there is no conflict.

[1] Permanently to deprive an owner of the use and benefit of his property, without his consent and against his will, is, we think, an irreparable injury regardless of the intrinsic value of the property involved.

Nor do we find anything in the evidence to support the finding that respondents or their predecessors in interest expended large sums of money in the construction of the

retaining wall. On the contrary, it seems to have been a comparatively insignificant addition to a dam already in existence, which, as originally built, is not involved in the present controversy; and there is no evidence as to the cost of the wall. A witness for respondents, the overseer who built the wall, does say that at first it was about twelve (12) inches in height and proved to be too short; thereupon the height and length were slightly increased.

The testimony for respondents tended to show that if the wall were removed. the water supplied by the reservoir, when thus reduced to its original dimensions, would not suffice to irrigate more than one half of the 250 or 300 *cuerdas* of cane planted after the improvements were made in 1912. It does not show that respondents would be unable to store at another ·place, or in some other way, the water needed for this purpose.

In any event, respondents for more than a decade have reaped the fruits of the verbal concession obtained from the author of petitioners; and, if given a reasonable time within which to harvest the cane now growing upon the additional acreage, will suffer no loss of which they can justly complain.

The testimony for petitioners, if true, established an express stipulation by José La O Almodóvar to the effect that the license was revocable at his pleasure. The overseer who acted at the time for the Fortuna Estate said that no term was specified. In either case, no consideration was mentioned, nor apparently was the matter of consideration in the minds of the parties at the time of the agreement, which, unless subsequently converted into something more substantial, created at most a mere tenancy at will.

It appears that some years later, during a period of drought, the licensor was permitted to pasture his cattle upon a small parcel of land belonging to respondent, and

that these cattle drank from a canal referred to as that of the Guánica Central, at a point beyond the boundaries of respondents' property.

After the death of José La O Almodóvar, petitioners delivered possession of the parcel used for pasturage purposes as aforesaid, and demanded the removal of the retaining wall. Respondents refused to comply with this request and petitioners were left with no other alternative than that of a resort to the courts.

It is not pretended that the privilege of pasturage or of watering stock at respondents' irrigation ditch, conceding for the sake of argument that the canal was controlled by respondents, had any element of permanency, or irrevocability. In the circumstances we are constrained to hold that the instant case does not fall within the doctrine of the California cases cited by appellee, nor within that of *Gaztambide et al.* v. *Guánica Centrale,* 26 P.R.R. 724, but rather within that of *Torres et al.* v. *Plazuela Sugar Co.,* 24 P.R.R. 451, and *Colón* v. *Plazuela Sugar Co.,* 31 P.R.R. 299.

[2, 3] To say that a licensor is estopped to revoke a gratuitous parol license merely because for a time subsequent to such grant he has exercised and later abandoned a similar and equally revocable privilege or courtesy, extended to him by his licensee, or because such licensee has expended in good faith a nominal sum as an investment from which he has reaped rich returns during a period of many years, when such revocation can be effected in such manner as will place the licensee in no worse condition with regard to future gains than that originally occupied by him, —does not accord with our ideas of logic, of equity or of substantial justice.

The judgment appealed from must be reversed.